OPINION
Appellant Dominion Homes, Inc. appeals the decision of the Delaware County Municipal Court, which granted judgment in favor of Appellee Donna Walser in a small claims action for a latent defect concerning a condominium purchase. The relevant facts leading to this appeal are as follows.
In 1994, the Borror Corporation ("Borror"), which later merged into Appellant Dominion Homes, Inc., began development of a condominium project in Genoa Township, Delaware County, known as "The Lakes." On April 13, 1997, appellee purchased a condominium unit pursuant to a written contract with Borror. The construction of the unit was completed, but it was later discovered that a subcontractor had paved over a code-required sewer clean-out access, which was part of the original construction plans. Appellant thereafter installed a manhole and cover at the site, which was in a paved "limited common area" driveway in front of appellee's unit. In so doing, appellant caused an approximately 8' x 8' square "patch" of different pavement texture and color to mar the appearance of the driveway. Thereafter, appellee requested that appellant and/or the condominium owners' association make the manhole cover area less conspicuous or repave the entire driveway area. Appellant, however, following consultation with the condominium association, did not meet appellee's requests to her satisfaction.
On March 21, 2000 appellee filed a complaint in the Delaware County Municipal Court, Small Claims Division. The trial court initially scheduled a matter for a small claims hearing on April 27, 2000. Appellant filed a motion to dismiss, asserting that appellee lacked standing to sue for the latent defect because of the manhole's location in a common or limited common area. In the alternative, appellant contended that appellee had failed to join an indispensable and necessary party, namely, the condominium association. The trial court deferred ruling of the motion to dismiss at that time, but set a hearing on the small claims action for May 25, 2000. On June 13, 2000, the small claims magistrate rendered a decision in favor of appellee for the sum of $3000. Appellant filed objections to magistrate's decision, but on October 31, 2000, a trial court judge overruled the objections and adopted the magistrate's decision in favor of appellee in the amount of $3000.
On November 30, 2000, appellant filed a notice of appeal, and herein raises the following three Assignments of Error:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FAILED TO ORDER JOINDER OF THE CONDOMINIUM ASSOCIATION IN A CASE SEEKING COMPENSATION FOR DAMAGES EXCLUSIVELY IN COMMON AREAS, WHERE THE DEFENDANT MOVED FOR JOINDER OF THIS NECESSARY AND INDISPENSABLE PARTY, THE REAL PARTY IN INTEREST, IN A TIMELY MANNER.
 II. THE TRIAL COURT ERRED WHEN IT GRANTED JUDGMENT WITHOUT PROBATIVE EVIDENCE OF DAMAGE OR HARM, AND COMPOUNDED THE PROBLEM BY PROHIBITING CROSS-EXAMINATION ON DAMAGES ISSUES.
 III. THE TRIAL COURT ERRED IN THIS ACTION BY ANNOUNCING A DECISION OR INCLINATION PRIOR TO HEARING EVIDENCE, DEPRIVING THE DEFENDANT TO (SIC) ITS RIGHT TO ADJUDICATION BY AN IMPARTIAL TRIBUNAL.
 I.
In its First Assignment of Error, appellant argues that the trial court erred in refusing to join the condominium association in appellee-owner's small claims action regarding a limited common area of her condominium. We disagree.
Civ.R. 19(A) addresses joinder of necessary persons as follows, in pertinent part:
 A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subroger, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7). * * *.
In addressing motions pursuant to Civ.R. 19(A), a trial court is vested with discretion in determining whether a party is necessary for just adjudication. See Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179;State ex rel. Gill v. Winters (1990), 68 Ohio App.3d 497, 503; Moore v.Baker (C.P. 1970), 25 Ohio Misc. 140.
Appellant cites several Ohio cases indicating that condominium owner associations are empowered to bring causes of action for defects or damages to common areas of a condominium project. See Point EastCondominium Owners' Assn. v. Cedar House Assoc. (1995),104 Ohio App.3d 704; Gardens of Bay Landing Condominiums v. FlairBuilders, Inc. (1994), 96 Ohio App.3d 353; Stony Ridge Hill CondominiumOwners Ass'n v. Auerbach (1979), 64 Ohio App.2d 40. For example, in ArborVillage Condominium Assn. v. Arbor Village Ltd., L.P. (1994),95 Ohio App.3d 499, the Tenth District Court of Appeals stated the following:
 It is apparent from the face of the statute [R.C. 5311.27(B)] that the General Assembly intended that the unit owners association be empowered to sue or be sued in "any action relating to the common areas and facilities." No language purporting to limit such an association's right to commence an action regarding the common areas appears anywhere in R.C. 5311.20. Id. at 509.
However, we have found no specific Ohio precedent that condominium owner associations must be joined in a suit, as a matter of law, upon an individual unit owner's action against a developer for alleged defects in a common or limited common area. In the case of Kerns v. Jevrem (Oct. 16, 1989), Delaware App. No. 89-CA-6, unreported, we relied on Hambletonv. R.G. Barry Corp., supra, in concluding "that where a person is integrally involved in the dealings of the parties and is likely to have claims arising out of those dealings, that person should be joined in the absence of the demonstration of prejudice to another party." Id. at 5. Nonetheless, our review of the record sub judice provides scant suggestion that the condominium owners association in this case was "likely" to assert a claim on behalf of the remaining unit owners for aesthetic damage to a single driveway.
The issue of a single alteration to a common area within a condominium development also arose in the case of Claridges of Walden CondominiumAss'n v. Wenk (Aug. 16, 1991), Portage App. No. 89-P-2110, unreported, wherein an owner's association challenged two unit owners' addition of a chimney, absent an amendment to the original condominium declaration, per the requirements of R.C. 5311.04(D). The Eleventh District Court of Appeals noted the following:
 In this case, [the two unit owners'] actions simply had no effect upon the percentage of interest each owner had in the common areas. While their actions changed the appearance of one part of the common area in which each owner had an interest, it did not diminish the amount of that interest in relation to the other unit owners. Accordingly, the provisions of R.C. 5311.04(D) simply have no application to the situation in this case. [Citation omitted.] Moreover, as a practical matter, [the association's] contention that the condominium declaration must be amended whenever a unit owner wants to make a minor alteration to a common area like a roof is illogical. * * *. Id. at 6.
We find it similarly illogical to require a small claims court to hamper efficient adjudication of a case under the present facts, on the remote possibility that the owner's association for this hundred-unit development would actually seek its own damages for a portion of one limited common area driveway. Requiring joinder in such a case is tantamount to mandating a vain act, which the law will not require. See,e.g., State v. Morrison (Oct. 24, 1989), Tuscarawas App. No. 89AP030028, unreported, at 4. Even if the scar on the driveway theoretically impacted the value of the undivided interest of all the unit owners, there is nothing in the record to indicate, practically speaking, this would have ever prompted the association to seek a legal remedy from the appellant developer. Therefore, we do not conclude that the trial court abused its discretion in effectively denying joinder of the condominium owner's association under the facts and circumstances of this case.
Appellant's First Assignment of Error is overruled.
 II.
In its Second Assignment of Error, appellant argues that the trial court's finding regarding damages is based on unsubstantiated evidence, which was not properly subjected to cross-examination. We disagree.
We first address appellant's contention that appellee's evidence presented at trial did not support the $3000 judgment. In Smith v.Padgett (1987), 32 Ohio St.3d 344, 347, the Ohio Supreme Court declared that "Ohio law has long since recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property." Although "fair market value" is the benchmark standard for valuing property, a court may also consider its "standard of value to the owner." Brookhart v. Brookhart (Nov. 18, 1993), Athens App. No. 93 CA 1569, unreported, at 4, citing Bishop v.East Ohio Gas Co. (1944), 143 Ohio St. 541, 546.
Appellant cites 43 Ohio Jurisprudence 3d (1983), Evidence and Witnesses, Section 662, for the proposition that "opinions are not competent as to the amount of damage sustained by reason of acts which affect the value of property, where the measure of damages is the difference in the value before and after the injury * * *." However, Ohio courts have permitted damage awards predicated only upon the plaintiff's estimate of damages. See Zink v. Harrison (July 16, 1992), Montgomery App. Nos. 12201, 12684, unreported, at 4, citing Eichel v. Dudley (1961), 18 O.O.2d 158, and Barr v. Starkey (August 31, 1984), Pickaway App. No. 81 CA 14, unreported. Additionally, in Jones v. Dayton Power Light Co. (Dec. 14, 1994), Greene App. No. 94-CA-49, unreported, the issue of owner testimony similarly arose in regard to diminution of property value. In that case, a power company cut down a large number of redbud trees which it decided were interfering with electric lines. At the hearing, the owner, Jones, opined that the removal of the trees caused his property to decrease $11,000 in value. The appellate court, in reversing the trial court's denial of damages, summarized as follows:
 Because the "owner-opinion" rule assumes that the owner is so closely acquainted with the property as to stay abreast of its market value, such testimony does not require a specific foundation as would an expert opinion on the matter. Accordingly, Mr. Jones, as the owner of the real property, was qualified to testify as to the market value of his land. In the context of establishing the market value differential, the "owner-opinion rule" presumably permits Mr. Jones to offer his opinion of the value of the property after the injury. Therefore, we conclude that Mr. Jones' estimate of the total value lost constitutes some evidence of the diminution in market value.
Id. at 14.
We therefore find that appellee's opinion as to the diminution in value of her condominium was properly admitted. Our remaining role is thus to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries
(February 10, 1982), Stark App. No. CA-5758, unreported. Having reviewed the record and exhibits, we find the evidence provides sufficient competent and credible evidence to support the award.
Appellant also claims that the magistrate impermissibly curtailed its right to cross-examine appellee on the issue of damages. The transcript reveals the following exchange between the magistrate, appellant's counsel, and Appellee Walser:
Q. Miss Walser, what did you pay for your unit?
A. The base price was 167,000.
 Q. Have you tried to sell your unit at any time subsequent to your purchase?
A. No, I have not.
 Q. If I offered you the base price for your unit today, would you sell it to me?
A. No, because I have improvements.
Q. How much of improvements?
A. I have put in about $15,000.
 Q. If I offered you the purchase price plus the cost of improvements —
MAGISTRATE PELANDA: You know —
Q. — would you sell it?
 MAGISTRATE PELANDA: — it's a hypothetical question for which there is no foundation.
 MR. LOVELAND: She asked — I mean, she speculated that her unit has lost value.
 You're not letting me cross-examining (sic) her on that very point.
 MAGISTRATE PELANDA: She's an owner, so she's not speculating. She's qualified by her virtue of her ownership to render an opinion on the value of her property, and that's what she did.
 MR. LOVELAND: And I'm examining her on the basis of her opinion.
 MAGISTRATE PELANDA: You cannot ask her a hypothetical question for which is there no foundation. Did you offer her that price? I don't hear any evidence of that fries (sic). You can't use that as the foundation for a hypothetical question.
Tr. Vol. II at 17-18.
The decision as to whether a hypothetical question is proper lies largely within the discretion of the trial court. Reese v. City ofCleveland (Nov. 1, 1990), Cuyahoga App. No. 57697, unreported. On cross-examination, the opposing party is entitled to posit questions to the other party's expert where such hypotheticals are consistent with the opposing party's case. Blake v. Fligiel (Dec. 3, 1998), Cuyahoga App. No. 73329, unreported, at 5, citing Brennan v. Young (1966), 6 Ohio App.2d 175,181. However, in the case sub judice, as noted previously, appellee testified under Ohio law as an owner, rather than as a qualified expert. Moreover, a hypothetical question is improper where it assumes facts not in evidence. State v. Minor (1988), 47 Ohio App.3d 22, 26. Therefore, we find no merit in appellant's contention that the trial court abused its discretion in limiting the amount of cross-examination.
Appellant's Second Assignment of Error is overruled.
 III.
In its Third Assignment of Error, appellant argues that the magistrate failed to act in an impartial manner and deprived appellant of its right to a fair trial. We disagree.
As this Court has previously noted, procedures in small claims court are generally more "elastic" in order to accommodate pro se litigants.McDonald v. Ohio Packaging Corp. (May 16, 1988), Stark App. No. 7390, unreported. The statutory scheme for small claims actions was intended by the legislature to provide a simple, prompt and informal procedure of little expense for adjudication. Barnhouse v. Pulley (Dec. 13, 1985), Tuscarawas App. No. 85A06047, unreported. Furthermore, as we indicated inRobinson v. Prudential Ins. (Jan. 19, 1999), Stark App. No. 1998CA00058, unreported:
 With the enactment of S.B. No. 263, the legislature revoked the statutory right to seek disqualification of a municipal court magistrate. Appellant does not identify any legal authority for the removal or disqualification of a magistrate. Our research has been equally fruitless. Accordingly, we believe the removal of a magistrate should be left to the sound discretion of the judge referring the matter to the magistrate.
Id. at 5.
Appellant emphasizes commentary by the magistrate made during what was essentially a pre-trial proceeding on April 27, 2000. The magistrate, after briefly reviewing some of appellee's photographs, commented that the driveway area "look[ed] like hell" and "look[ed] awful." Tr. Vol. I at 9-10. He further observed that "I think she's going to be entitled to some relief if I don't hear any — based upon what I think the evidence is going to be and they're going to take the attitude — [sentence uncompleted]." Tr. Vol. I at 10.
Appellant's formal request to the judge for recusal of the magistrate came after the May 25, 2000 trial and subsequent rendering of the magistrate's decision, and was incorporated into appellant's objection pursuant to Civ.R. 53. Although falling short of an oral motion for recusal during the magistrate's proceedings, the following exchange is present in the record:
MAGISTRATE PELANDA: Is that on the plans?
MR. LOVELAND: Is the eight-foot patch?
MAGISTRATE PELANDA: Right.
 MR. LOVELAND: No. The sewer clean-out is what she said came as a surprise to her.
 MAGISTRATE PELANDA: That would be a surprise to me if they put something like that in the middle of my driveway.
 MR. LOVELAND: You know, you announced your opinion in this case before you accepted any evidence, Your Honor, so we know where you're coming from on it.
 MAGISTRATE PELANDA: And what you really need to do is conduct yourself in a bit more professional manner.
 What I was trying to do was give you an idea of where you're headed in this case before you got started. Obviously that was not appreciated or any credit given to it whatsoever.
Tr. Vol. II at 22-23.
We find the magistrate's above response cogently summarizes the procedural events in this case. Our review of the record, against the backdrop of the less stringent arena of small claims court, does not demonstrate predisposition by the magistrate to such magnitude that we would be inclined to find an abuse of discretion by the trial court on the question of recusal.
Appellant's Third Assignment of Error is overruled.
For the reasons stated in the foregoing opinion, the decision of the Delaware Municipal Court, Delaware County, is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Delaware County, Ohio, is affirmed.
Pursuant to App.R. 24(A), costs to be taxed to appellant.
 ________ Wise, J.
Edwards, P. J., and Boggins, J., concur.